UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSHUA GOLDSMITH et al. )<br>) | Criminal No. 03-10234-MLW |

**DEFENDANT JOSHUA GOLDSMITH'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE**

**PROCEDURAL HISTORY**

On May 25, 2004, a warrant for the arrest of Joshua Goldsmith ("Goldsmith") was issued, charging him with conspiracy to possess with intent to distribute marijuana, a Schedule I substance (Count One); and possession with intent to distribute marijuana, a Schedule I controlled substance (Counts Two and Three), in violation of Title 21 USC, §§ 846 and 841(a)(1).

**FACTS**

The government has alleged that On May 15, 2003, Goldsmith contracted Old Dominion Freight Line ("Old Dominion") to ship a package from Point Loma, California to Dracut, Massachusetts. The package was described in the Bill of Lading as a wooden crate containing test equipment with a weight of 600 pounds. According to the Bill of Lading, the package was sent from Underwater Equipment Sales in Point Loma, California to DVP Diving and Video in Dracut, Massachusetts. The package was to be sent "Will Call," which typically means that when the package arrived at the Old Dominion Freight Line dock in Dracut, Massachusetts, the

receiver of the package would be notified to pick up the package and pay the charges owed for delivery. The delivery cost was $359.20. See Bill of Lading, Exb. 1.[1]

On May 16, 2003, Task Force Officer ("TFO") Marty Ferrell of the Drug Enforcement Agency ("DEA") Greensboro Resident Office Interdiction Group in North Carolina received information from an Old Dominion employee, Geoff Steffany, regarding a suspicious freight shipment that was destined for Massachusetts. Ferrell contacted the manager of security at Old Dominion in Point Loma, California, and discovered that the freight was shipped by Goldsmith and that payment for the shipment was to be paid upon arrival of the package in Dracut, Massachusetts. However, there is some confusion as to whether the package was prepaid in cash or whether the balance was due upon receipt in Dracut, Massachusetts. According to the manager of security, all payments paid in cash require identification, which is how Ferrell received Goldsmith's personal information. See DEA Report of Investigation, Exb. 2 at 2.

Ferrell then contacted DEA TFO Wayne Starr in Point Loma, California, to investigate the addresses found on the Bill of Lading. Starr stated that he believed the sender's address was fictitious because he could not locate a business under the name of Underwater Equipment Sales in the area. Ferrell then contacted the Dracut, Massachusetts police department and spoke with Detective Joe Jakuttis, who informed him that he could not find a business by the name of DVP Diving and Video in the area. As it turned out, the address listed on the Bill of Lading for this business was actually the address of the Old Dominion terminal in Dracut. Exb. 2 at 3.

Ferrell then requested that Old Dominion *reroute* the package to North Carolina in order to obtain a search warrant. On May 21, 2003, Ferrell obtained a North Carolina State Search

---

[1] References to Exhibits will be cited as : Exb. [number].

Warrant for the freight. The freight arrived on the docks of Old Dominion in Greensboro, North Carolina that same day at approximately 9:55 a.m., at which time the search warrant was executed. Approximately 196 pounds of marijuana were discovered.[2] Exb. 2 at 3.

On May 28, 2003, a controlled delivery was initiated. The package was picked up by John Lawrence Ryan, Jr. He was subsequently arrested. Also present during the arrest were John Gillies and Benjamin Silver, who were later charged as accomplices.

## ARGUMENT

### I. THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE SEIZURE OF THE PACKAGE VIOLATED THE FOURTH AMENDMENT.

The Fourth Amendment to the United States Constitution guarantees "the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Supreme Court has held that this Fourth Amendment guarantee extends to mailed items. United States v. Van Leeuwen, 397 U.S. 249, 251 (1970), quoting Ex parte Jackson, 96 U.S. 727, 733 (1877) ("Letters and sealed packages . . . in the mail are as fully guarded from examination and inspection, except to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles.")

When the package allegedly sent by Goldsmith was rerouted to North Carolina from California, the government effectively seized it for Fourth Amendment purposes because there was "some meaningful interference with [Goldsmith's] possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). This interference amounted to dominion

---

[2] The drug quantity is incorrectly listed at 235 pounds in several different documents.

3

and control over the package's contents, which constitutes a total seizure for Fourth Amendment purposes. Id. at 120.

The government affected this seizure without a warrant, and thus it can only be valid if there are exigent circumstances. Illinois v. McArthur, 531 U.S. 326, 330 (2001). The burden of proving the reasonableness of a warrantless seizure is on the government. Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971). However, the government cannot prove the existence of any exigent circumstances in this case which would justify this warrantless seizure. Cf. Pennsylvania v. Labron, 518 U.S. 938, 940-41 (1996) (per curiam) (exigent circumstances exist for warrantless search of automobile if supported by probable cause); Mich. Dept. of State Police v. Sitz, 496 U.S. 444, 455 (1990) (exigent circumstances exist for suspicionless stops at drunk driver checkpoint).

Even if this Court believes that rerouting the package was not a total seizure, the government must still offer articulable facts sufficient to support a reasonable suspicion of criminal activity in order to justify rerouting the package. United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999), citing Van Leeuwen, 397 U.S. at 251; see generally Terry v. Ohio, 392 U.S. 1, 21 (1968) (outlining reasonable suspicion standard). No reasonable suspicion exists here where the package merely fit certain characteristics which could just as easily exist in a package that does not contain contraband. Johnson, 171 F.3d at 604.

Moreover, if law enforcement does not investigate diligently, or detains the package for an unreasonable amount of time, the evidentiary burden increases from reasonable suspicion to probable cause. United States v. La France, 879 F.2d 1, 8 (1st Cir. 1989). Here an unnecessary

rerouting of the package causing at least a five-day delay in its delivery clearly exceeds the scope of an investigatory detention.

### A. THE SEIZURE OF THE PACKAGE VIOLATED THE FOURTH AMENDMENT BECAUSE THE POLICE DID NOT HAVE A WARRANT

#### 1. THE REROUTING AMOUNTED TO A TOTAL SEIZURE WHICH REQUIRES A WARRANT

If a government investigator merely observes the outside of a package or lifts it from a conveyor belt and handles it briefly for inspection, then there is no seizure for Fourth Amendment purposes, and the government action is subject to no scrutiny at all. See United States v. Gomez, 312 F.3d 920, 923 (8th Cir. 2002). When the government removes a package from the mail stream and takes it to another part of a mail processing facility for more thorough inspection, then it has conducted a stop subject to constitutional scrutiny. See United States v. Morones, 355 F.3d 1108, 1111-12 (8th Cir. 2004). This kind of partial seizure is analogous to a so-called Terry stop and must be supported by reasonable suspicion. See Gomez, 312 F.3d at 923-24, citing Terry, 392 U.S. at 1. Finally, there are full-fledged seizures, where the government asserts "dominion and control over the package and its contents." Jacobsen, 466 U.S. at 120. These seizures must be conducted pursuant to a warrant supported by probable cause. Id. at 121-22.

Here, the government asserted dominion over the package when it needlessly rerouted it to North Carolina instead of leaving it in California to be inspected, requesting that it be detained along the route when the alleged suspicion developed, or holding it in Massachusetts upon arrival. First Old Dominion informed Ferrell that it was in

possession of a "suspicious package." Ferrell then contacted another DEA agent in Point Loma, TFO Starr, to investigate the sender and its address on the Bill of Lading, which was listed as Underwater Equipment Sales of Point Loma. When Starr informed him he could not find a record of the company, Ferrell then contacted Detective Joe Jakuttis of Dracut, Massachusetts, who informed him that he could not find a business by the name of DVP Diving and Video, the listed recipient of the package.

At this point, Agent Ferrell had several options. He could choose to ignore his suspicions and let the package be delivered as planned, ask that it be sent back to California if indeed it had already left, request that Old Dominion detain the package wherever it was on its route so he could investigate further, or request that Jakuttis detain the package upon its arrival in Dracut. Inexplicably, Ferrell chose a fifth option, one that imposed by far the greatest intrusion on Goldsmith's Fourth Amendment rights, when he needlessly rerouted the package to North Carolina.

As a result of choosing this latter option, Ferrell removed this case from the category of mail seizures within which the courts have applied the reasonable suspicion standard. In nearly every case where the courts have been faced with the issue of whether a seizure of mail is lawful, the package in question was detained at its point of origin. See, e.g., United States v. Lux, 905 F.2d 1379, 1380 (10th Cir. 1990); United States v. Mayomi, 873 F.2d 1049, 1054 (7th Cir. 1989); United States v. Gill, 280 F.3d 923, 929 (9th Cir. 2002); United States v. Ganser, 315 F.3d 839, 844 (7th Cir. 2003); see also United States v. Hunt, 496 F.2d 888, 893 (5th Cir. 1974) (distinguishing Van Leeuwen and suppressing evidence due to lack of probable cause where law enforcement did not

merely remove package from mail stream but instead affected a total seizure of defendant's property).

The government, in the "reasonable suspicion" cases cited above, was not exercising total dominion and control over the package; it was merely delaying delivery. Instead of removing the package from its rightful course, the government there was merely interjecting itself into the mail stream. Here however, instead of allowing an agent in another area to do the investigating for him, Ferrell chose to make the package come to him. In doing so, Ferrell completely deprived the sender and recipient of their possessory interest in the parcel, an action which requires a warrant supported by probable cause.

2. **THE GOVERNMENT CANNOT SHOW EXIGENT CIRCUMSTANCES WHICH WOULD JUSTIFY A WARRANTLESS SEIZURE**

As a general rule, seizures of personal property are "unreasonable within the meaning of the Fourth Amendment . . . unless . . . accomplished pursuant to a judicial warrant." United States v. Place, 462 U.S. 696, 701 (1983). The courts have created several exceptions to the requirement when law enforcement can show special circumstances justifying the warrantless seizure. See, e.g., Labron, 518 U.S. at 940-41 (search of automobile supported by probable cause); Sitz, 496 U.S. at 455 (suspicionless stops at drunk driver checkpoint); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298-99 (1967) (warrantless search for suspect and weapons reasonable where delay posed grave danger)

There are four recognized categories of exigent circumstance: "(1) 'hot pursuit' of a fleeing felon; (2) threatened destruction of evidence … before a warrant can be obtained; (3) a

risk that the suspect may escape . . .undetected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to herself." Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999).

The Supreme Court has held that there are no exceptions to the rule that a warrantless search and seizure can only be conducted if there are exigent circumstances:

> [N]o amount of probable cause can justify a warrantless search or seizure absent exigent circumstances. Incontrovertible testimony . . . may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not . . . make a warrantless seizure.

Washington v. Chrisman, 455 U.S. 1, 11-12 (1982) (citation omitted).

Here the police were not in hot pursuit of Goldsmith, there was no reason to believe evidence was going to be destroyed or Goldsmith was going to escape, and clearly he posed no threat to the officers' safety or to that of the public. Thus, regardless of the probable cause the government claims it has to justify the total seizure of the package, the evidence must be suppressed because there clearly were no exigent circumstances.

### B. EVEN IF THE SEIZURE OF THE PACKAGE DID NOT AMOUNT TO TOTAL DOMINION AND CONTROL, IT STILL VIOLATED THE FOURTH AMENDMENT BECAUSE THE POLICE LACKED REASONABLE SUSPICION

Even if this Court finds that the government did not undertake a total seizure of the package, it could only be detained for further investigation if there was reasonable suspicion, based on articulable facts, that it contained contraband. Van Leeuwen, 397 U.S. at 252-53. "The determination of whether a government agent's suspicion is constitutionally reasonable is exceedingly fact-specific. We examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be

8

'understood by those versed in the field of law enforcement.'" United States v. DeMoss, 279 F.3d 632, 636 (8th Cir. 2002). (citation omitted).

An officer must possess a "particularized and objective basis" for suspecting that the package contains contraband, that is, more than an "inchoate and unparticularized suspicion or 'hunch.'" Johnson, 171 F.3d at 603-04. For example, there is a stronger basis for detention of a package when a drug dog reacts positively to it, thus establishing probable cause that there is contraband in the package. See, e.g., United States v. Robinson, 707 F.2d 811, 815 (4th Cir. 1983); United States v. Walter, 682 F.2d 370, 372 (2d Cir. 1982).

In the present case, no canine dog sniff was performed at any point during the detention. Yet the government claims that, at the point the package was diverted, Ferrell had specific and articulable information which would have led him to believe the package contained contraband. On the contrary, even when considered together, the facts Ferrell knew were not sufficient to amount to reasonable suspicion under the Fourth Amendment for the detention of the package.

Ferrell was first alerted by the fact that the sender chose the "Will Call" option allowing the recipient to schedule the pickup of the package. However, this option is readily available to all Old Dominion consumers simply by checking a box at the top of the Bill of Lading form. Exb. 1. Second, he was disturbed by the fact that he could not locate the businesses listed as the sender and recipient. Yet it is apparent that he was not even aware of the nature of the sender and recipient's address until after he rerouted the package.[3]

---

[3] It is further unclear whether Ferrell was aware of Goldmith's criminal history. Agent Hersey's affidavit makes no mention of any prior history when discussing why the crate was rerouted. See Affidavit of Kevin Hersey, Exb. 3. Ferrell's application for a search warrant mentions a conviction and an arrest, but that information may have been obtained after the seizure took place. See Search Warrant, Exb 4. Furthermore, even if the agents were aware of Goldmith's record, the only conviction at the time was from 1991, twelve years earlier.

Ferrell believed that these facts combined to fit the profile of packages that contain contraband and thus rerouted the package to North Carolina. However, these facts could just as easily be explained by innocent conduct. If the sender and recipient were small businesses, they might not have sufficient need to establish an account with the freight company. The inability to verify the addresses of the businesses could also be explained by the small size or informality of the company. A small company may also want to reduce costs by arranging for its own delivery, thus justifying the use of the Will Call option. These factors taken together do not support a reasonable suspicion. See Reid v. Georgia, 448 U.S. 438, 440-41 (1980) (the mere fact that certain characteristics fit a drug profile will not establish reasonable suspicion); accord United States v. Dennis, 115 F.3d 524, 532 (7th Cir. 1997); United States v. Hanson, 801 F.2d 757, 762 (5th Cir. 1986); see also United States v. Vasquez, 213 F.3d 425, 426 (8th Cir. 2000) (noting there was inadequate evidence of reasonable suspicion to seize a package where the package "was incorrectly addressed even though the sender and recipient had the same last name; the air bill was handwritten, marked 'priority overnight,' and contained no account number; and the package was sent from California"); Johnson, 171 F.3d at 604 (holding there was inadequate evidence of reasonable suspicion to seize a package where "the labels were handwritten, the package was mailed from one individual to another individual at the same address, the package was mailed from a narcotics source state, and the return address zip code was different from the accepting zip code.")

    C. **EVEN IF THE DECISION TO DETAIN THE PACKAGE WAS SUPPORTED BY REASONABLE SUSPICION, THE REROUTING AND LONG DELAY IN RELEASING THE PACKAGE EXCEEDED THE SCOPE OF AN INVESTIGATORY DETENTION**

Even if this Court were to find that the initial detention of the defendant's package was supported by reasonable suspicion, the court must then consider the reasonableness of the government's continued detention and investigation. Place, 462 U.S. at 709-10. This result of this inquiry depends largely upon the diligence of the investigation and the length of the detention. Id; see generally United States v. Allen, 990 F.2d 667, 672 (1st Cir. 1993) (applying the United States v. Place criteria to determine reasonableness of detention and investigation of United States mail).

At some point in time, a detention of mail extends from a stop to a seizure requiring probable cause. United States v. Sharpe, 470 U.S. 675, 685 (1985); United States v. Evans, 282 F.3d 451, 455 (7th Cir. 2002); Dennis, 115 F.3d at 533. In considering whether the investigation and length of detention of mail is so minimally intrusive that it is reasonable in the absence of probable cause, courts consider whether law enforcement officials could have acted more swiftly. See, e.g., Allen, 990 F.2d at 671. "Brevity of a detention is an important factor in determining whether it may be justified by reasonable suspicion only … We also consider whether the police diligently pursued their investigation." Dennis, 115 F.3d at 533 (citation omitted).

Courts have set different standards as to whether an investigation is diligent and swift. Compare United States v. Aldaz, 921 F.2d 227 (9th Cir. 1990) (finding that warrantless detention of four packages for a period of six days and another for a period of three days was not unreasonable when focusing on the difficulty to locate drug-sniffing dogs in the interior of Alaska) with United States v. Dass, 849 F.2d 414, 415 (1988) (court affirmed suppression motions when agents detained defendants' packages for periods between seven to twenty-three

11

days, which could have been shorter if police had acted diligently); see also United States v. Mayome, 873 F.2d 1049, 1054 (holding that the detention of defendant's mail for forty-eight hours in order to confirm an FBI agent's suspicion did not invade the defendant's rights under the Fourth Amendment); United States v. Hillison, 733 F.2d 692 (9th Cir. 1984) (nine-hour detention of package held reasonable); Van Leeuwen, 397 U.S. at 253 (Supreme Court upheld a 29-hour seizure of a mailed package prior to the issuance of a search warrant while an investigation was made).

In the case at bar, the government did not expeditiously conduct an investigation of the wooden crate or its contents. In fact, there was no investigation at all when the crate arrived at Old Dominion Freight Line in Point Loma, California on May 15, 2001. Instead, on May 16, 2001, Ferrell received information in North Carolina from Old Dominion in Point Loma in reference to a suspicious package being shipped from their warehouse to Dracut, Massachusetts. Exb. 2 at 1. Only then, once the wooden crate was already in transit, did the investigation begin.

A package sent from Point Loma, California sent to Dracut, Massachusetts, without any interruptions, would normally arrive in five days.[4] Here Goldsmith sent his package on May 15, 2003, and it was not delivered until May 27, 2003, twelve days later. Exb. 2 at 1, 4. Therefore, the package was delayed approximately seven days. Even if the days after the warrant was issued are not charged to the government, the package was effectively seized from the point at which the rerouting was requested (May 16), up until the time it arrived in North Carolina (May 21). Based on the considerable delay alone, Goldsmith's Fourth Amendment rights were violated. See

---

[4] See Old Dominion Freight Line Corporation Website <http:www.odfl.com/transittime/transit_time.jsp>.

United States v. Hernandez, 313 F.3d 1206, 1209 (9th Cir. 2002) (holding that the defendant's "possessory interest is in the timely delivery of a package.")

Yet, the government might characterize the rerouting of the package to North Carolina as a temporary detainment pending issuance of warrant authorized under Van Leeuwen. However, the crucial difference between Van Leeuwen and this case is that the package was not merely held at the post office or at the freight company in Point Loma, California as was done in Van Leeuwen. Instead it was rerouted to Greensboro, North Carolina. This furthers the unreasonableness of the investigatory detention to the point where the government should be required to show probable cause.

### IV.     THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE SEARCH OF THE PACKAGE VIOLATED THE FOURTH AMENDMENT

The government did not have probable cause, or even reasonable suspicion, to reroute or detain the package. Therefore, this Court should suppress the evidence obtained in the search of the package because it was the fruit of the unlawful seizure. Wong Sun v. United States, 371 U.S. 471, 484 (1963); United States v. Lopez, 989 F.2d 24, 27 (1st Cir. 1993).

Furthermore, the magistrate who issued the warrant did not have a substantial basis for determining that the search would uncover wrongdoing. Illinois v. Gates, 462 U.S. 213, 216 (1983). A finding of probable cause cannot be sustained where the main supporting evidence was simply that the investigators could not determine whether the businesses listed on the Bill of Lading existed, the sender did not have an account with Old Dominion, and the package was addressed to the freight company. The government cannot demonstrate probable cause simply by

alleging that the package has suspicious characteristics. See Reid, 448 U.S. at 440-41; Hanson, 801 F.2d at 762; Dennis, 115 F.3d at 532.

The exclusionary rule should be applied here because Goldsmith had a reasonable expectation of privacy in the package. See generally Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) (Fourth Amendment implicated when defendant has a reasonable expectation of privacy); see Van Leeuwen, 397 U.S. at 251 (Fourth Amendment protection extends to mailed property); see also United States v. Pitts, 322 F.3d 449, 454 (7th Cir. 2003) (expectation of privacy not diminished simply because sender or recipient seek to obscure their identities).

### A. THE WARRANT ISSUED FOR THE SEARCH OF THE PACKAGE WAS NOT SUPPORTED BY PROBABLE CAUSE

Issuance of a search warrant is valid if there exists "a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. This court cannot uphold a warrant where it is supported by a "barebones" affidavit. United States v. Brown, 941 F.2d 1300, 1303 (5th Cir. 1991). Furthermore, the fact that a package fits a certain profile is not sufficient evidence to support a finding of probable cause. See Argument, supra at 10.

Even if this Court does not suppress the evidence obtained in the search as fruit of the unlawful seizure, United States v. Lopez, 989 F.2d 24, 27 (1st Cir. 1993), the evidence should still be suppressed because the warrant was invalid. This case is most similar to Hunt, 496 F.2d at 895, where the court found that a warrant for the search of shipped material was not supported by probable cause. In that case, the defendants were charged with shipping obscene materials

across state lines. Id. at 890. The affidavit the lower court relied upon alleged that the officer knew of the defendant's occupation, knew the manner in which the contraband was shipped, and had observed similar boxes in the past which contained this contraband. Id. at 895. On appeal, the court held that the warrant and subsequent search was invalid because "[w]ithout any specific knowledge that these boxes contained obscene materials, the affiant's statements show nothing more than assertions and conclusions of suspected criminal activity that are unsupported by the facts related in his affidavit and thus do not establish probable cause." Id.

In the case at bar, the affidavit in support of the warrant contained three assertions. The first was that the payment and delivery methods were similar, in the officer's experience, to the shipment of other packages that contained contraband. The second was that the investigators could not verify the addresses listed on the Bill of Lading. The third assertion was that the sender and another person associated with one of the phone numbers provided by the sender had some semblance of a criminal background. Exb. 4.

These assertions are insufficient to support a finding of probable cause. Like the affidavit in Hunt, the mere familiarity with the sender or recipient's background coupled with the claimed familiarity with the suspicious shipping method is not enough to sustain the warrant. See also Reid, 448 U.S. at 440-41; Hanson, 801 F.2d at 762; Dennis, 115 F.3d at 532 (the government cannot demonstrate probable cause simply by alleging that the package has suspicious characteristics).

Furthermore, although Ferrell claims his suspicions were raised because of the criminal backgrounds of the sender and another associated with the package, an examination of the affidavit reveals that the lone criminal conviction cited by the affiant was twelve years old at the

15

time the warrant issued. The other "charges" referred to by the affiant had not reached a disposition. Therefore, the magistrate did not have a substantial basis for determining that a search of the package would uncover wrongdoing. Gates, 462 U.S. at 216.

> B. **THE DEFENDANT HAD A REASONABLE EXPECTATION OF PRIVACY AND THUS HAS STANDING TO CONTEST THE SEARCH AND SEIZURE OF THE PACKAGE ON FOURTH AMENDMENT GROUNDS**

In order to enjoy the benefits of the exclusionary rule, the party seeking to suppress evidence must have a reasonable expectation of privacy in the area searched or the article seized. Katz v. United States, 389 U.S. 347, 351 (1967); Vega-Rodriguez, 110 F.3d at 178 ("Governmental intrusions do not implicate the Fourth Amendment unless they infringe upon an individual's reasonable expectation of privacy.") For Fourth Amendment purposes, "a privacy expectation must meet both subjective and objective criteria: the complainant must have an actual expectation of privacy, and that expectation must be one which society recognizes as reasonable." Id.

In this case, there is no doubt that the defendants themselves expected the contents of their package to remain private. Furthermore, since Goldsmith himself was the sender of the package, this Court should recognize his expectation of privacy. See Van Leeuwen, 397 U.S. at 251 (holding that the defendant has a right to privacy in the contents of the package that he mailed). In addition, courts have held that society still recognizes the expectation as reasonable even if the sender or recipient use fraudulent addresses. United States v. Villarreal, 963 F.2d 770, 774 (5th Cir. 1992) ("[T]his court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names."); see also United States v. Pitts, 322 F.3d 449, 457 (7th Cir. 2003) ("[I]ndividuals have a reasonable expectation of

privacy in packages addressed to them under fictitious names even when the false names are used to distance the sender or recipient from the criminal nature of the contents of the package.")

## CONCLUSION

The DEA's rerouting of Goldsmith's package to North Carolina amounted to a total seizure of his possessory interests. The government cannot offer evidence to support even a reasonable suspicion of criminal activity, let alone probable cause or exigent circumstances, which could justify its actions. Even if the seizure was initially an investigatory detention, the government detained the package for an unreasonable amount of time and did not diligently investigate, escalating the stop into a full-fledged seizure requiring probable cause. In addition, the search of the package was conducted on an item of personal property in which Goldsmith retained an expectation of privacy. Therefore, the evidence obtained in that search was fruit of the unlawful seizure. Finally, although the search warrant was obtained, albeit too late, even it failed to make out probable cause for the seizure and search of the package.

Wherefore, the defendant respectfully requests that this Court suppress the contents of the package and all the fruits that flow therefrom.

Respectfully Submitted By,

        Joshua Goldsmith,
By His Attorneys,

//S//Stephen Hrones
Stephen Hrones
BBO # 242860
Jessica D. Hedges
BBO # 645847
Hrones and Garrity
Lewis Wharf -- Bay 232
Boston, MA  02110-3927

Dated: January 10, 2005