UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>JOSHUA GOLDSMITH   )<br>)<br>Defendant   )<br>) | CRIMINAL NO:<br>03-10234-MLW |

### AFFIDAVIT OF JOHNNY MARTIN FERRELL

I, Johnny Martin Ferrell, hereby depose and state as follows:

1. I am currently a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA") assigned to a multi-jurisdiction narcotics interdiction task force in Greensboro, North Carolina. I have been so assigned since September, 2002. I have been in law enforcement since December 1986. From December 1986 through July 1989, I was assigned to the Patrol Division of the High Point (North Carolina) Police Department. In July 1989, I was assigned to the Vice/Narcotics Division of the High Point Police Department, primarily as a Narcotics Investigator. In September of 1989 I was assigned a Narcotics Detection Dog and trained as a Narcotics Detection Dog Handler in addition to my team assignment as an Investigator. In July of 1997 through September 1998 I was assigned to the United States Marshal Service and sworn in as a Special Deputy to work on a multi-jurisdictional fugitive task force. In October of 1998 I

was transferred back to the Vice/Narcotics Division of the High Point Police Department, again, primarily as a Narcotics Investigator.

2. I have received more than 1,000 hours of training in narcotics investigations. This training includes but is not limited to: Major Case Investigations from the North Carolina Justice Academy, Salemburg, N.C., Smuggling, Legal Issues, Target the Suspect, Narcotics Interdiction, Narcotics Identification, and Certified in Clandestine Laboratory Investigations. I have been certified through the North Carolina Justice Academy as an instructor and teach the Controlled Substances block of instruction in recruit schools for new officers regularly at Community Colleges. In my thirteen (13) year tenure as a Narcotics Investigator I have been involved in over five hundred (500) cases involving the sale and delivery of illegal controlled substances and have worked numerous cases where I have purchased illegal controlled substances in an undercover capacity.

3. On or about May 16, 2003 I received information from the Old Dominion Freight Company about a suspicious package being shipped from Point Loma, California, destined to Dracut, Massachusetts. At the time, I was advised by Old Dominion that the shipper had paid cash to deliver the crate. I also received by facsimile a copy of the Bill of Lading and a xerox copy of the driver's license of Joshua Goldsmith, the individual who had

arranged with Old Dominion to ship the box. The Bill of Lading listed the shipper as the Underwater Equipment Sales, 317 Catalina Ct., Point Loma, CA 92107 and two telephone numbers of 619-980-0807 and 800-329-3324. It appeared on the facsimile copy of the bill of lading that the crate was addressed to DVP Diving Studio, 33 Silva Lane, Dracut, MA 01826 and a telephone number of 781-244-2154. The freight is described as being a wooden crate containing "test equipment." The Bill of Lading had a "will call" note, meaning that someone would pick the crate up at the depot, rather than Old Dominion delivering the crate to its ultimate destination.

4. I checked Joshua Goldsmith ("Goldsmith") on the Drug Enforcement Administration database and learned that he had been arrested in Chicago Illinois on April 11, 1992 for possession with intent to distribute marijuana. According to the DEA database, he had possessed 19.5 pounds of marijuana at the time. A criminal history check on Goldsmith showed that he had been convicted on August 16, 1991 of this charge, and that he was also arrested in California on January 25, 2001, for possessing marijuana for sale and conspiracy. The last arrest showed no disposition.

5. I also checked all of the telephone numbers on the Bill of Lading through the DEA database, and found one of the numbers - (800)329-3324 - was associated with a Michael Joseph Doyle

3

("Doyle"). Doyle was entered into the database as being suspected of distributing kilogram quantities of cocaine, and distributing crystal methamphetamine, ecstasy, ketamine rohyphnol xanax and marijuana.

6. Based upon that information, and based on my training and experience, on May 16, 2003, I contacted the Director of Security at Old Dominion and requested that he reroute the crate to Greensboro, North Carolina, where my office is based. At the time, I learned that the crate was already in transit. I also knew that because the ultimate destination of the crate was Dracut, Massachusetts, that it would first be delivered to Old Dominion's hub in Morristown, Tennessee. I was told at the time that if the crate were not seized by DEA, there would be no delay and that it could still be delivered to Dracut, MA, within the time period promised by Old Dominion.

7. Sometime between May 17 and 19, 2003, I learned additional information about the shipment. I learned that the shipper, Underwater Equipment Sales, is not a known business in the Point Loma, CA area, and learned that its address, 317 Catalina Ct., Point Loma, CA does not exist. I also learned from the Dracut (Massachusetts) Police Department that there is no business by the name of DVP Diving Studio, or by any other similar name, in the area. I learned that the address listed for DVP Diving Studios was actually the address for the Old Dominion

4

depot in Dracut, MA.

8. Based upon the above-referenced information, as well as upon my training and experience, on May 21, 2003, I applied for, and obtained, a search warrant for the crate bearing Pro # 00801725235. On May 21, 2003, the crate had arrived at the Old Dominion facility in Greensboro, NC. When I arrived at the Old Dominion facility after the warrant was issued, the crate was still on the Old Dominion truck. When I saw the crate, I noticed that the consignee on the crate was actually to DVP Diving and Video, not DVP Diving Studio as I had previously believed.

9. A subsequent search of the crate revealed that it contained four (4) locked containers, each of which contained marijuana. Almost 235 pounds of a green, leafy substance consistent in odor and appearance with marijuana were ultimately found in the four containers within the crate.

10. After executing the search warrant, I seized the crate containing the marijuana and contacted DEA, Boston Field Division Interdiction Group, about my discovery. On the following day, May 22, 2003, I delivered the crate to a DEA plane in Greensboro, NC. The crate containing the marijuana was flown by DEA from Greensboro, NC, to Boston, MA on May 22, 2003, at which time DEA-Boston took custody of it.

I declare under penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and

5

ballot.

Executed in New Orleans, Louisiana, on this ___ day of May, 2005.

_____
Johnny Martin Ferrell
Task Force Agent
Drug Enforcement Administration