UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 03-10234-MLW |
| ) | |
| v. ) | |
| ) | |
| JOSHUA GOLDSMITH, *et al.* ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT GOLDSMITH'S SENTENCING MEMORANDUM**

**I.    Introduction**

For the reasons articulated in the instant memorandum, the defendant respectfully requests that this Court impose a sentence of five years incarceration—the applicable mandatory minimum sentence—which is the only reasonable sentence given the clear mandate of 18 U.S.C. §3553(a), which obligates the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in the second paragraph of that statute: the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

**II.    Background**

Joshua Goldsmith was born on July 23, 1970, in Boston, Massachusetts, to Max and Aline (Romano) Goldsmith. Goldsmith resided with his parents in Newton, Massachusetts throughout his childhood and remained in the Newton area through his early twenties. For a majority of the last seven years, he has resided in Los Angeles, California. He currently resides at 12808 Zanja Street in Los Angeles. PSR, ¶49.

  His father and mother, both age 58, reside at 3 Waverly Avenue in Newton, Massachusetts. The father is employed as a factory manager at Griffin Manufacturing, Inc. in Fall River, Massachusetts. His mother is employed as a medical office manager in a local medical facility. PSR, ¶¶50-51. Goldsmith's sister, Rachel Donovan, age 31, resides in Darien, Connecticut with her husband and young child.

  Although Goldsmith's parents provided well for him, from very early on he had difficulties with his academic studies because of severe learning disabilities. PSR, ¶53. He has been diagnosed with dyslexia, and, while he was in school, he suffered from auditory delays and what would be now be regarded as Attention Deficit Disorder. He was first diagnosed when he was eleven years old, but prior to that, these learning issues were not fully recognized by his school system. Goldsmith was prescribed Ritalin at one point by the family's pediatrician, but his parents decided that the drug had too many side effects. PSR, ¶54.

  Goldsmith attended Newton Public Schools until his senior year in high school when he attended a small private school in Watertown. PSR, ¶55. Over the next few years he enrolled in several different colleges. Due to his academic difficulties, however, he was unable to complete many courses. PSR, ¶55. Throughout this time period, he was being financially supported by his parents. PSR, ¶57.

  After college, he has held several jobs. In 1993, he started an internet company that made video games with several of his friends. This continued off and on for five years until it went out of business. PSR, ¶57. During this time period, Goldsmith married a woman named Megan Smith. This marriage lasted for one year, until their separation in 1999. The divorce was devastating for Goldsmith. PSR, ¶58.

  After the separation, Goldsmith moved to San Diego, California, then back to

Massachusetts for a year, and then to Los Angeles, where currently he resides with his girlfriend Brielle Riess. PSR, ¶12. Although Goldsmith's criminal charges have placed a strain on their relationship, she remains supportive. PSR, ¶60.

Goldsmith is extremely embarrassed by his involvement in the instant offense, particularly since it is devastating" to his family. His mother described it as "tragic" because he was "finally in a good place" and now she is concerned that he will "panic" and "shut down" when he is incarcerated, though she does not think he is suicidal. PSR, ¶62.

According to Mrs. Goldsmith, the defendant was always in special needs classes and has Attention Deficit Disorder, although it was never formally diagnosed as such. She related that Goldsmith is often not able to express what is in his head, and has trouble with "organization and output." He was assigned to several social workers and counselors at the public school but he struggled with academics and social skills. According to her, Goldsmith has always been an avid reader and is "very creative" but has a difficult time expressing himself and organizing his thoughts. He also has trouble writing. PSR, ¶63.

When Goldsmith was a junior in high school, he began to get extremely frustrated with his learning issues and began to "shut down." PSR, ¶64. His parents thought he would benefit from a small, private school where he would receive special attention, so they enrolled him in the Palfrey School in Watertown for his senior year. Id. Throughout high school and college, he mostly obtained grades of "D" and "F." PSR, ¶73.

Goldsmith began drinking alcohol at the age of fourteen and has used marijuana regularly as well. He also admits to having had a heroin problem. PSR, ¶56. In addition, he has used cocaine, methamphetamines and ecstasy. PSR, ¶71.

His parents are aware of his prior drug history. The once paid for him to go to an

3

inpatient program called Hazelden in Minnesota, where he also received mental health counseling. In the past, Goldsmith used drugs to "self-medicate" because he was sometimes unable to process situations. Goldsmith's mother believes that the defendant would benefit from drug and mental health treatment in the future. PSR, ¶65. She also feels that he would benefit from participating in academic programs while incarcerated as long as his learning issues can be addressed. She asked that the Court be made aware that the defendant is a "good son, very caring, very family-oriented, feels horrible, and is embarrassed." PSR, ¶66.

Goldsmith himself feels he benefited from his treatment at the Hazelden Center City. He also enrolled in a detoxification program in Rancho Bernardo, California in 1998 and is open to participating in drug treatment programs. However, since he does not do well in group settings, he would prefer individualized programs if possible. PSR, ¶72.

## III.    Argument

### A. The Defendant should be sentenced to five years in prison based on the factors outlined in 18 U.S.C. §3553 and the sentences received by his co-defendants for identical conduct

The Defendant should be sentenced to the low end of the Guideline range, which would be the statutory minimum of sixty months confinement. This sentence is both reasonable and just, given the factors outlined in §3553 and the sentenced received by his two co-defendants. In determining sentence, the Court must consider all the factors outlined in 18 U.S.C. §3553:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed shall consider.
>    **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>    **(2)** the need for the sentence imposed –
>        **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>        **(B)** to afford adequate deterrence to criminal conduct;

4

>>> **(C)** to protect the public from further crimes of the defendant; and
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> **(3)** the kinds of sentences available
>> **(4)** the kinds of sentence and the sentencing range established for –
>>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing Guidelines –
>>> . . .
>> **(5)** any pertinent policy statement –
>>> **(A)** issued by the Sentencing Commission
>>> . . .
>> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

The case at bar involved a conspiracy between three other individuals to possess marijuana with the intent to distribute it. One co-conspirator cooperated and received leniency. The others, Benjamin Silver and John Gilles, contested the charges initially but eventually pled guilty. On January 19, 2006, this Court sentenced Silver to sixty months custody. On May 24, 2005, co-defendant Gilles was also sentenced by this Court to sixty months custody. As it did with each of his two co-defendants, the government is asking for sixty months custody for Goldsmith and forty eight months of supervised release.

Goldsmith pled guilty to one count of conspiracy and two counts of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§841 and 846. There were no allegations of violence or any weapons being involved. Were it not for the statutory minimum of five years, the Guideline range for Goldsmith's offense would be 57-71 months, since he has a criminal history category of three and an adjusted offense level of twenty three. PSR, ¶¶89-90.

Therefore, given the sentences of his co-defendants, and the requirement in §3553 that the court should "avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct," the Defendant respectfully requests a sentence of sixty months custody, with the agreed-upon forty eight months of supervised release. He also requests placement in a prison with drug counseling and educational programs.

                                              Respectfully Submitted,
                                              Joshua Goldsmith,
                                              By His Attorneys,


                                              //s// Stephen Hrones
                                              Stephen Hrones
                                              BBO No. 242860
Dated: June 8, 2006                      Michael Tumposky
                                              BBO No. 660618
                                              Hrones, Garrity & Hedges
                                              Lewis Wharf -- Bay 232
                                              Boston, MA  02110-3927
                                              T) 617-227-4019

## CERTIFICATE OF SERVICE

     I, Stephen Hrones, hereby certify that, on this the 8th day of June, 2006, I have caused to be served a copy of this document where unable to do so electronically, by first-class mail, postage prepaid, to all counsel of record in this matter.

                                              //s// Stephen Hrones
                                              Stephen Hrones